In the Matter of the Worker's Compensation Claim of Darlene GODDARD, an Employee of Colonel Bozeman's Restaurant.

Darlene GODDARD, Appellant (Employee/Claimant),

v.

COLONEL BOZEMAN'S RESTAURANT, Appellee (Employer/Defendant),

State of Wyoming ex rel. Workers' Compensation Division, Appellee (Objector/Defendant).

No. 95–171.

Supreme Court of Wyoming.

April 19, 1996.

Brian N. Beisher of Hart & Reiter, Sheridan, for Appellant.

William U. Hill, Attorney General, John W. Renneisen, Deputy Attorney General, and Jennifer A. Evans, Assistant Attorney General, for Appellee State ex rel. Workers' Compensation Division.

Before THOMAS, MACY, TAYLOR and LEHMAN, JJ., and H. HUNTER PATRICK, District Judge.

MACY, Justice.

The hearing examiner denied the application submitted by Appellant Darlene Goddard (the claimant) for worker's compensation benefits. The claimant filed a petition for review of the hearing examiner's decision with the district court, and that court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

We affirm the hearing examiner's decision.

## ISSUES

The claimant presents the following issues for our review:

A. The decision that [the claimant] was not injured at the work place is clearly contrary to the overwhelming weight of the evidence on record.

B. The Office [of Administrative Hearings] improperly excluded evidence and improperly considered evidence contrary to the Wyoming Rules of Evidence.

C. The decision that [the claimant] did not timely file her worker's compensation claim and as a result caused prejudice to the employer and the [Workers' Compensation] Division is clearly contrary to the overwhelming weight of the evidence on record.

## FACTS

The claimant began working for Appellee Colonel Bozeman's Restaurant (the restaurant) on August 3, 1994, as a part-time hostess. On August 8, 1994, the claimant worked a shift with another new employee, and the two women argued. The claimant contends that the other employee pushed or shoved her during this argument and that she fell to the ground and twisted her knee. The other employee claims that, although she did argue with the claimant, she did not push or shove the claimant and cause her to fall.

The claimant did not initially believe that her knee had been hurt badly even though she was experiencing immediate "excruciating pain." She finished working her shift on that day. The claimant maintains that she has had inflammation, swelling, and severe pain in her left knee ever since and that she has taken "Tylenol and/or Tylenol 3" for the pain. Within one day of her fall, the claimant told her daughter-in-law, her supervisor at the restaurant, and the general manager at the restaurant about the incident. She also asserts that she met with the general manager and showed her the swollen knee. The general manager, however, testified that, although she was informed about the argument soon after it occurred, she did not learn about the alleged injury before the claimant filed a worker's compensation claim. The claimant's supervisor testified that she had not been informed about the claimant's knee injury even though they discussed the incident.

The restaurant terminated the claimant's employment on or about August 9, 1994, because the claimant was not able to learn the restaurant's computer cash register system. On September 4, 1994, the claimant began working for the Crossroads Inn as a cashier/hostess. The Crossroads position was very similar to her position at the res-taurant in that it required her to do a lot of standing and walking.

The claimant did not seek medical attention for her knee until October even though she visited the Buffalo Medical Clinic on August 16, 1994, and again on September 26, 1994, for other purposes. On October 4, 1994, the claimant told a doctor at the clinic that she was having pain in her left knee. Her x-rays did not show that she had any acute fractures but did show that the left knee had "marked degenerative changes." At that time, the doctor prescribed physical therapy for her knee. The doctor ultimately referred the claimant to an orthopaedic surgeon at the Gillette Bone & Joint Clinic.

The surgeon examined the claimant on October 25, 1994, and determined that she had a "lateral meniscus injury" to her knee. He testified that the claimant suffered from degenerative weakness in her left knee which was most likely caused by a previous serious injury and surgery. The claimant admitted that she had surgery on her left knee, but she was not sure when that had occurred. The surgeon opined that the August 8, 1994, fall caused the claimant's knee problem, conceding that his only source of information was the claimant herself.

The claimant's son was working for the restaurant as a bartender during and after the claimant's encounter with the other employee. On or about October 10, 1994, her son admitted that he had been drinking on the job, and the restaurant terminated his employment. The claimant was upset when she found out that her son had been fired. She subsequently wrote two letters to the restaurant, complaining that the general manager did not help her file a claim for her injury and that the restaurant wrongfully terminated her son's employment. On October 19, 1994, the claimant filed an application with the Wyoming Workers' Compensation Division, requesting worker's compensation benefits for the alleged injury to her left knee.

The Workers' Compensation Division denied the claimant's application, and the claimant objected to that determination. After holding a hearing, the hearing examiner en-

tered his order in which he included findings of fact and conclusions of law, and he denied the claimant's application for benefits. He concluded that the claimant had failed to prove that her injury arose out of and in the course of her employment.

The claimant filed a petition for review of the hearing examiner's decision with the district court. The district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

 W.R.A.P. 12.09 provides that a judicial review of administrative decisions is limited to a determination of the matters which are specified in WYO.STAT. § 16–3–114(c) (1990). Section 16–3–114(c) provides in pertinent part:

> (c) ... [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> . . . . .
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

"[A]n agency's action is arbitrary and capricious and must be reversed if any essential finding is not supported by substantial evidence." *Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Commission*, 721 P.2d 1070, 1079 (Wyo.1986).

## DISCUSSION

### A. Substantial Evidence

The claimant contends that the hearing examiner's conclusion that she did not sustain an injury which arose out of and in the course of her employment was contrary to the overwhelming weight of the evidence.

 The claimant has the burden of proving every essential element of her claim by a preponderance of the evidence. *Gilstrap v. State ex rel. Wyoming Workers' Compensation Division*, 875 P.2d 1272, 1273 (Wyo.1994). Under the statutory definition of injury, she must prove that her injury arose out of and in the course of her employment. WYO.STAT. § 27–14–102(a)(xi) (Supp. 1995); *Hepp v. State ex rel. Wyoming Workers' Compensation Division*, 881 P.2d 1076, 1079 (Wyo.1994). Whether an employee's injury occurred in the course of her employment is a question of fact. 881 P.2d at 1077. We review an administrative agency's findings of fact by applying the substantial evidence standard. Section 16–3–114(c)(ii)(E). Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. *Romero v. Davy McKee Corporation*, 854 P.2d 59, 61 (Wyo.1993). We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Bearden v. State ex rel. Wyoming Workers' Compensation Division*, 868 P.2d 268, 269 (Wyo.1994). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Jackson v. J.W. Williams, Inc.*, 886 P.2d 601, 603 (Wyo.1994).

The hearing examiner's order provided in pertinent part:

> A. After carefully listening to the testimony and reviewing the documents submitted at the hearing and through hearing depositions, this Office is left with a factual determination about the credibility of the Claimant's testimony versus the credibility of opposing witnesses' testimony. This Office finds that the inconsistency in [the claimant's] statements about the severity of pain and discomfort she alleges she felt in her left knee from August 8, 1994 to the

present, contrasted with medical records showing three (3) visits by her to the Buffalo Clinic between August 8, 1994 and October 4, 1994 without any complaints about left knee pain, compromises her testimony. [The claimant's] testimony was not credible concerning numerous lengthy explanations she gave for not filing a Worker['s] Compensation claim sooner or more timely when she felt she had a severe left knee injury. [The claimant] certainly knew she had injured her left knee in the past, knew on August 8, 1994 and from that time forward that she suffered severe pain in that knee and did not actually file a Worker's Compensation claim until October 20, 1994, more than seven (7) full weeks after she alleged her injury occurred. This Office does not find [the claimant's] testimony about alleged repeated notifications of complaints to [the restaurant] about a left knee problem and Worker['s] Compensation claim in that regard to be credible. Had [the claimant] suffered from the extreme left knee pain and discomfort she now alleges beginning on August 8, 1994, and had she actually discussed that with [Dr.] Nolan or [Dr.] Gonzales at the Buffalo Clinic between August 8, 1994 and October 4, 1994, there most certainly would be some note of those discussions in the medical records. Since [the claimant] did not call [Dr.] Nolan or [Dr.] Gonzales as witnesses in her case in chief, this Office is left with no other evidence about her complaints to those doctors during August and September 1994 other than what is in their notes which were introduced into evidence.

B. This Office further concludes as a factual matter that the testimony of [the general manager], [the other employee] and [the claimant's supervisor] is credible and entitled to the most weight in this matter. All of these witnesses testified candidly that [the claimant] had engaged [the other employee] in a verbal argument on August 8, 1994. They all indicated that [the claimant] had been offered a chance to report anything about that argument as a Worker['s] Compensation claim and she had not mentioned her left knee and had specifically declined to make a claim at

that time. This Office is further persuaded by [the general manager's] testimony that [the claimant] did not ever report or seek a claim form for an August 8, 1994 left knee injury at [the restaurant] from [the general manager] prior to filing of her claim on October 20, 1994. [The general manager's] testimony was candid, straightforward and consistent with the testimony of [the other employee] and [the claimant's supervisor].

C. This Office further finds and concludes that evidence was presented to substantiate the [Workers' Compensation] Division's theory that [the claimant] filed the Worker['s] Compensation claim against [the restaurant] over a month after she began working at the [Crossroads] Inn as a cashier/hostess because she was upset about the fact that her son ... had been fired by [the restaurant]. [The claimant's] October 20, 1994 letter to the [Workers' Compensation] Division which was admitted into evidence ... show[s] graphically [the claimant's] vehement feeling against [the restaurant] concerning her son's firing. This Office concludes that it is not coincidental that [the claimant] filled out her compensation claim form on October 15, 1994, only five (5) days after her son was fired and actually filed the claim on October 20, 1994, along with the aforementioned letter describing her displeasure with her son's firing.

The hearing examiner was in the best position to judge the credibility of the claimant and the other witnesses. *Padilla v. Lovern's, Inc.*, 883 P.2d 351, 355 (Wyo.1994). He noted in his order that he was concerned about the inconsistencies in the testimony which was given on how the claimant sustained her injury. The hearing examiner was also in the best position to judge the weight to be given to the medical evidence. *Id.* Sufficient ambiguities in the evidence existed to trigger the process of weighing the evidence and assessing the credibility of the witnesses. That task was for the hearing examiner, not for an appellate court, to perform.

"The testimony in this record may be subject to varying interpretations, but we

will not usurp the function of the [trier of fact] in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts.... [The trier of fact] 'was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence.' *Ward v. Yoder*, Wyo., 355 P.2d 371, 374 (1960)."

*Hepp*, 881 P.2d at 1079 (quoting *Creek v. Town of Hulett*, 657 P.2d 353, 357 (Wyo. 1983)). Substantial evidence supported the hearing examiner's conclusion that the claimant failed to prove that her claim arose out of and in the course of her employment. Section 27–14–102(a)(xi).

## B. Evidentiary Rulings

The claimant asserts that the hearing examiner improperly excluded as evidence a letter signed "Barbara" and that he should not have admitted evidence with regard to the restaurant's termination of her son's employment.

 Admissibility of evidence is committed to the discretion of the hearing examiner. *See Romero*, 854 P.2d at 62 n. 2. A hearing examiner abuses his discretion when his decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it. *State ex rel. Wyoming Workers' Compensation Division v. Rivera*, 796 P.2d 447, 451 (Wyo.1990).

WYO.STAT. § 16–3–108(a) (1990) controls evidentiary questions which arise in administrative proceedings. That section provides in pertinent part: "[I]rrelevant, immaterial or unduly repetitious evidence shall be excluded." Section 16–3–108(a). Hearsay evidence is admissible in an administrative proceeding when it satisfies the requirements of § 16–3–108(a) and is "probative, trustworthy and credible." *Story v. Wyoming State Board of Medical Examiners*, 721 P.2d 1013, 1018 (Wyo.1986).

The letter was addressed to the claimant and was signed "Barbara." It was barely legible, and the declarant was never located. Since the hearing examiner did not have any way of knowing the declarant's identity or her motive for writing the letter, this hearsay evidence was unreliable. The hearing examiner did not abuse his discretion in excluding it.

The claimant asserts that the evidence with regard to the restaurant's termination of her son's employment was irrelevant and unfairly prejudicial. The hearing examiner found that this evidence was relevant to the claimant's motive for filing her report of injury. The hearing examiner was justifiably suspect of the claimant's late filing and could have reasonably concluded that the reason she filed was to retaliate against the restaurant for firing her son. The hearing examiner, therefore, properly considered the evidence.

## C. Late Filing

The claimant argues that the hearing examiner's finding that the late filing of her claim prejudiced the restaurant and the Workers' Compensation Division was clearly contrary to the overwhelming weight of the evidence. The decision in which the hearing examiner found that the claimant had failed to prove her injury arose out of and in the course of her employment was not arbitrary, capricious, or an abuse of discretion and was otherwise in accordance with law. Since that decision is dispositive, we do not need to discuss the claimant's challenge to the hearing examiner's finding that the appellees were prejudiced by the late filing of her claim.

The hearing examiner's decision is affirmed.