Shela HURLEY, Appellant (Petitioner),

v.

PDQ TRANSPORT, INC.; and State of Wyoming, ex rel., Wyoming Workers' Compensation Division, Appellees (Respondents).

No. 99–152.

Supreme Court of Wyoming.

May 10, 2000.

Representing Appellant: Bert T. Ahlstrom, Jr., Cheyenne, Wyoming.

Representing Appellee Wyoming Workers' Compensation Division: Gay Woodhouse, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; Bernard P. Haggerty, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

GOLDEN, Justice.

Appellant Shela Hurley appeals the denial of worker's compensation benefits by the Medical Commission following its determination that her 1997 back surgery was not causally connected to her 1991 work-related injuries to her neck and head.

We affirm.

## ISSUES

The statement of the issue on appeal is:

Whether the Medical Commission's Finding of Fact, Conclusions of Law and Order that Appellant did not meet her burden by a preponderance of the evidence was arbitrary, capricious, an abuse of discretion, not in accordance with the law, unsupported by substantial evidence and contrary to the weight of the evidence.

## FACTS

On April 8, 1991, Hurley jumped up and hit her head on the bucket of a backhoe placed above her. She suffered a closed head injury and injured her neck and received worker's compensation benefits for chiropractic treatment and disability. Her chiropractic treatments included cervical, thoracic, and lumbar adjustments. During 1991 and 1992, Hurley was seen by an orthopedic surgeon, a neurologist, and a neurosurgeon without complaint of lower back pain. Chiropractic notes from July of 1992, however, recorded lumbar muscle spasm and adjustment. On September 21, 1992, Hurley's impairment evaluation was conducted and no mention of lower back pain was made. X-

rays of the cervical spine showed no abnormalities, and an MRI of the head and neck showed no abnormalities; however, the evaluation concluded that the medically documented injury and its associated pain and rigidity warranted a 4% permanent partial disability award for the impairment of the neck/back.

In 1993, an additional evaluation by a neurosurgeon for back pain in her left upper extremity deemed Hurley eligible for an additional 2.5% permanent partial disability award for impairment of her back. Later in 1993, Hurley underwent examinations by a neuropsychologist and a physical medicine physician without mention of low back pain or lower back injury. In January of 1996, her chiropractor, Dr. Sweet, submitted a letter to the Workers' Compensation Division (Division) opining that Hurley had L4–5 and L5–S1 biomechanical lesions on August 3, 1995, and referring to an MRI dated September, 1996, indicating abnormalities in this region.[1] Dr. Sweet provided cervical and lumbar spine treatments in March, April, and September, 1996.

In June of 1996, Hurley suffered domestic violence injuries caused by her husband and was seen by emergency room physicians. She reported that she had been hit in the jaw and chest by his fist and had hit him with her right hand. She complained of pain in her chest and her right hand but denied teeth or neck pain. An examination indicated "mild tenderness along the lumbar region of the back without any spasm." Her hand was wrapped and she was instructed to apply ice to her chest and hand. No treatment was provided for her back. On September 30, 1996, Hurley received physical therapy for a back and neck injury she stated that she had received in a domestic violence incident in June of 1996. She reported that she began to notice symptoms including low back pain three weeks earlier, and her past medical history on that date was reported as including:

serious neck and closed head injury in 1991, after which time [she] underwent

---

1. It appears that the MRI was taken in September of 1996 and the doctor's letter is dated incor- rectly.

extensive therapy between 1991 and 1993. [She] reports that she was released to her work ... in ¹²⁄₉₃ and was doing well until the domestic violence incident in 6/96.

Hurley was seen again on December 23, 1996, for low back pain and again attributed it to the domestic violence incident in June of 1996 when she was "knocked into a cabinet." She claimed that the pain had been constant since that incident. She was given nerve root injections at L4 and L5 during the winter of 1997, and she was admitted to the hospital on February 12, 1997, because of increasing low back pain and radicular type symptoms. She was diagnosed with lumbar disk disease and underwent a partial laminectomy at L4–L5 and filed a claim for benefits that was denied. In March of 1997, at the Division's request, orthopedic surgeon, Dr. Weiner, reviewed Hurley's medical file and noted that the September 30, 1996, MRI was the first documented evidence of low back pain and determined that her lower back pain was not caused by her 1991 injuries but was primarily due to degenerative disk disease possibly aggravated by the domestic violence incident. Dr. Weiner found the chiropractic notes and diagnosis unreliable and stated that degeneration at this level of the spine is extremely common and most likely not related in any way to the head trauma Hurley suffered in 1991.

An independent medical examiner, Dr. Walker, determined that the cause of the herniated disk rupture was the 1991 injury and not the 1996 domestic violence injuries. The Medical Commission held a hearing on April 13, 1998, and issued a written decision concluding that Hurley failed to show by a preponderance of the evidence that her disk disease is related to the 1991 work-related injury and denying benefits. The district court affirmed, and this appeal followed.

## DISCUSSION

*Standard of Review*

█ A claimant requesting worker's compensation benefits has the burden of proving all essential elements of a claim by a preponderance of the evidence. *Carrillo v. State ex rel. Wyo. Workers' Safety and*, *Comp. Div.*, 987 P.2d 690, 692 (Wyo.1999). To prove by a preponderance of the evidence, the claimant must bring forth "proof which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence." *Thornberg v. State ex rel. Workers' Comp. Div.*, 913 P.2d 863, 866 (Wyo.1996) (quoting *Scherling v. Kilgore*, 599 P.2d 1352, 1359 (Wyo.1979)).

█ When the party charged with the burden of proof has failed to meet that burden, we review the case under the arbitrary, capricious, abuse-of-discretion, or otherwise not in accordance with law standard. *Keck v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 985 P.2d 430, 432 (Wyo.1999); *City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995).

Under the arbitrary, capricious and abuse of discretion standard, we are charged with examining the entire record. Wyo. Stat. Ann. § 16–3–114(c) (Lexis 1999); *Utech*, 895 P.2d at 452. In our examination and review of a hearing examiner's determination, we defer to the hearing examiner's findings of fact. *Pederson [v. State, ex rel. Worker's Comp. Div.]*, 939 P.2d [740] at 742 [ (Wyo.1997) ]; [*Wyoming Steel & Fab., Inc. v.*] *Robles*, 882 P.2d [873] at 875 [ (Wyo.1994) ]. We will examine conflicting and contradictory evidence to see if the hearing examiner reasonably could have made its findings based on all the evidence before it. *Pederson*, 939 P.2d at 742, and cases therein cited. The findings of fact may include determinations of witness credibility, as the hearing examiner is charged with determining the credibility of the witnesses. *Pederson*, 939 P.2d at 742; *Utech*, 895 P.2d at 451. In our review, we will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence. *Nellis v. Dept. of Transp.*, 932 P.2d 741, 743 (Wyo.1997); *Pederson*, 939 P.2d at 742; *Robles*, 882 P.2d at 875.

*Carrillo*, 987 P.2d at 693.

█ Hurley argues that the Medical Commission's conclusion that she failed to prove by a preponderance of the evidence a

causal relationship ignores Dr. Walker's independent medical examination and conclusions. She claims that Dr. Walker's evidence satisfied her burden of proof by a preponderance of the evidence and the Commission's conclusion is arbitrary and capricious. The issue before the Medical Commission was whether her lumbar disk disease was caused by the 1991 work-related injury. Causal connection is a question of fact. The task of determining the credibility of the witnesses and weighing the evidence is assigned to the Medical Commission, and its determination will be overturned only if it is clearly contrary to the great weight of the evidence. *Helm v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 982 P.2d 1236, 1237 (Wyo. 1999).

In its findings of fact, the Commission stated:

Dr. Walker's evaluation relies heavily on the history provided by Ms. Hurley and assumptions made about the reasons for prior chiropractic low back adjustments. Most of the documentation of low back complaints is derived from chiropractic reports. We note low back adjustments may be considered routine chiropractic care in some instances.

We find the mechanism of Ms. Hurley's 1991 work-related injury is not consistent with low back pain or the need for a partial laminectomy and diskectomies at L4–L5 some six years later. We do not find chiropractic adjustments of the lumbar spine to be objective medical evidence of low back injury at the time of her industrial accident. Ms. Hurley makes no mention of back pain to Drs. Crane, Metz, MacGuire and Schafer and by her own report, suffered chronic low back pain following a domestic violence incident in June, 1996. We agree with Dr. Weiner, Ms. Hurley's low back condition was most likely the result of the natural progression of her degenerative disk disease, aggravated by domestic violence and is not compensable under the Wyoming Workers' Compensation Act.

The Commission's statement shows that it did not ignore Dr. Walker's report and conclusions; it fully considered the evidence, but found the report unreliable for the reasons stated. The Commission concluded that the history Hurley provided to Dr. Walker was contradicted by Hurley's own statements during other examinations and the 1996 MRI, and this conclusion is supported by the evidence. The Commission also determined that the chiropractic diagnosis and treatment was not objective evidence that she injured her back in her work-related accident. Because Dr. Walker based his conclusion on the chiropractic treatments and notes, the Commission gave his report no weight in their consideration of the evidence. The role of the Medical Commission is to resolve medically contested issues through the professional expertise of health care providers. *See Snyder v. State ex rel. Wyo. Workers' Comp. Div.*, 957 P.2d 289, 295 (Wyo.1998). The Commission's role includes determining the weight to be given to medical opinion testimony, and will not be reweighed upon review. Contrary to Hurley's assertions, the Medical Commission is not legally obligated to accept the findings of an impartial, appointed independent medical examiner if, in their expertise, the Commission determines the factual basis for the report and conclusion is not credible or reliable.

The order denying benefits is affirmed.